My counsel, am I pronouncing your client's name properly? United States v. Leal, case number 18-2083. You may proceed. May it please the court, counsel. Your honors, my name is Jason Bowles. I'm from Albuquerque, New Mexico. And I submit to this court that Mr. Leal, under the district court's decision, is being asked to run the gauntlet a second time on a conspiracy charge for which he has already been tried and convicted in the District of New Mexico. Brief factual background, your honors. This case started in May of 2016 when the ATF had a confidential informant, May 5th of 2016, who approached my client for the purpose of trying to conduct methamphetamine drug deals in New Mexico. The confidential informant then began a series of contacts with Mr. Leal and through other parties to try to accomplish those methamphetamine drug deals. It began with a man named Pete. The CI then did not feel like he got enough methamphetamine from Pete. He went back to Mr. Leal. Mr. Leal then, through a cellmate in jail, was able to arrange a deal with the Tapias. And that was the, I'm going to call the first indictment, the Tapia indictment. That was Bernadette Tapia and her daughter. And those two conducted a methamphetamine deal with the confidential informant. The next thing that happened, that was June 8th of 2016, is on or about July 21st, July 25th, that time frame, there was a deal with Carmona, and that is the second indictment. The Carmona indictment. I missed something. When was the date on the Tapia deal? The Tapia was June 8th of 2016, Your Honor. And that was, the CI conducted a methamphetamine transaction with the Tapias. Then there was an indictment on July 12th. Yes, sir. July 12th. I'm sorry, Your Honor. That is correct. July 12th, there was an indictment for the Tapia charge. Mr. Leal was then incarcerated. Then on July 21st, the CI again begins the process through Leal of trying to get a methamphetamine deal done. So Mr. Leal is actually doing further deals while he's incarcerated on the first case with the confidential informant. So that culminates in the July 25th, 2016 and August 3rd, 2016 deals with Carmona. The reason I believe, to go to the core of it, the district court erred in this determination that these were not interdependent, and I believe that is the standard under Sasser, under this court's Sasser case, whether there was a common unlawful goal or purpose and a interdependence, is the district court took the confidential informant out of the equation in his reasoning. What he said was, you cannot have a conspiracy between only a defendant and a confidential informant, which is this court's law in DMACC and Barboa. But what Barboa says, 1985 case out of this court, is that you cannot only conspire with a confidential informant. So when the district court takes the confidential informant out of that analysis, he does so completely. And then he defines the objectives to be two separate, essentially, distribution networks, the Tapia distribution network and the Carmona distribution network, but what that ignores is the factual reality of what happened. The confidential informant was pushing Leal to set up methamphetamine deals with multiple people, and that's exactly what happened in a chain that occurred from May of 2016 to It did involve different people on the back end, but those people were all united in one common purpose, and that was the confidential informant was asking Mr. Leal to set up methamphetamine deals in the District of New Mexico. So yes, they were disparate, Carmonas were disparate from the Tapias, but it was all one united scheme created by the government, by the confidential informant who asked Leal to set up these deals. The next factual problem... So if the CI was just a random third party, then you'd have a single conspiracy? I think it's absolutely a single conspiracy, and I don't think the CI status changes that determination when you put it into the context of what is interdependent. I realize you cannot only conspire with a CI under this court's case law. However, we didn't have only a CI. We had the Carmonas and we had the Tapias. And the question is, was that one loosely knit, as this court's called it, vertically integrated organization? Or was it a... I guess you go wagon wheel, but you had two separate lines of people selling methamphetamine, but they were all generated from the confidential informant and Mr. Leal. So it was one coordinated scheme that the CI wanted to have happen. The other problem with this second indictment... And I did try to... Could I just throw in a couple of questions on a couple of procedural points? Yes, sir. The defense didn't ask for an evidentiary hearing on this. I guess it did, but then withdrew the request. So you're not contesting any of the facts that the district court relied on? I am not. And I don't think any of them are clearly erroneous. All right. And the government says the standard of review is clear error. What is your position on the standard of review for interdependence? I think that's incorrect. With all due respect to the government, I think the factual finding determination is subject to clear error review. The determination whether something was interdependent, I think, is a de novo standard. And it's a legal application. So it's either a mixed application of law to fact or a straight legal determination. So I think the government does talk about clear error, but I think that has to be a de novo standard where this court looks anew at whether these facts create an interdependence. I think that's a legal determination. And Your Honor, the other... I'm not sure if you would always have, but I think the factors of time, of scope, of... I know there was this court's mints case, there was actually two conspiracies in two different states. In the Jones case this court had, there was a PCP conspiracy and a pharmaceutical drug conspiracy. And the court said that those were different objectives. So I think you have to determine whether there was a common, united objective. And what kind of drugs were being sold, what was the purpose of that organization. And I think here, there was a common, united objective and it was to sell methamphetamine using that CI. The other problem, Your Honor, that I think... Let me ask you this, don't you need some engagement or communication or interchange between the various distributors in order to have interdependence? I don't think you do because in fact, in reality, that's really unusual to have the lower level distributors talking to each other. In fact, drug organizations do not, they don't want to do that. What they do is they get disparate people and they never know who the top person is. So the middlemen, they don't have everybody communicating because that takes away the secrecy of the whole thing. Well how do you establish interdependence then? Well I think the interdependence comes through the shared common goal, which is to obtain methamphetamine for the confidential informant. So this court's conspiracy law doesn't make it to where everybody has to know everything. In fact, I think the law says people do not have to know every detail. I understand, but as you go on, it sounds like you're changing your answer. And my question about the common CI, if you have a common defendant, you have what you have to have, and you have a common CI, it seems to me your answer indicates there has to be a chain of conspiracy. I guess the only thing I would say is if the conspiracy was broader and there was another state, another line of drugs involved, like your Jones case, then it might not be a shared common objective is all I'm saying. And Your Honor, the other thing I would say that I think is a problem, Judge Browning does find below there is no overlap of these conspiracies. And he characterizes the Carmona indictment as beginning July 2016. The problem with that, the indictment was charged as a conspiracy beginning no later than, at a date unknown, but no later than July 21st, 2016. In other words, the way the conspiracy charge is written, it covers a time frame before July 21st, which is unknown. Next problem with that, and the government presented, and one reason I didn't ask for an evidentiary or we withdrew it, we had all the evidence there they were going to produce. The government presented a PowerPoint of its opening in which, and I tried the underlying Tapia case, it's the same proof. It's the same confidential informant, it's the same dates, it's the same exact witnesses, it's virtually identical witnesses and exhibits. What the government is now saying is, we're going to use that as 404B evidence in this case and present the same case, but that's 404B. The other pernicious problem of this- Well, counsel, is it really presenting the same case or is it using rule 404B for a proper purpose under 404B, which could be any one of the laundry list of items in the rule, including a common modus operandi? I'm not sure that they're really presenting that case to prove, and beyond that, maybe you would have been successful in keeping it out, but it seems to me you're trying to use that 404B evidence to establish an interdependent conspiracy when the government may have been using it simply as it uses 404B evidence in any case. And that's my whole point, Your Honor, is that normally what happens in this type of situation when they're so close in time, and they have overlapping facts and players, and the government calls this inextricably intertwined evidence, and they say it's part and parcel raised jeste of this offense, and I've had that a million times in court and trial, and this case- Well, then it isn't 404B evidence. It's not, but that's what they normally characterize it as. Yeah, but here they were characterizing it as 404B. Yes, but that doesn't change the heart of the issue, which is- Well, I just don't see how that gets you to an interdependent conspiracy. I understand your other arguments. That one I'm having some trouble- And I understand, Your Honor, completely. My only point is trying to suggest to this Court that it's the same course of conduct in this conspiracy, same shared common goal, and same enterprise through the confidential informant and Mr. Leal that produced this. The only difference are the people who sold the methamphetamine on the two distribution dates. That's really the only difference. Otherwise, the core of it is the same. Your Honor, the other issue that I think is, I was going to say, is pernicious about, if this is permitted, you look at a case like El Chapo that's being tried now. You get cases that have a number of different disparate acts as you go. The government then can file, can do what they did in this case, try the first case, file an 851 enhancement, which is in the record, docket sheet, which the 851 enhancement doubles the penalties. Then they try the next case, which, in my opinion, is really part and parcel of the first one, a conspiracy, but you get that added penalty. So if you do this, and you chop up a conspiracy into three cases, file two 851 enhancements, you get a life sentence. And there's really nothing to prevent the government, if they really want to carefully word the indictment and chop up conspiracies, there's nothing to prevent that sentencing result from occurring. And here, my client's going to be facing a added 851 penalty merely because they decided we're going to chop the conspiracy up between July and June, even on an indictment that charges conduct occurring before July. So if we find that Judge Browning was right to throw out the CI's participation, do you lose everything? I think it makes the analysis much tougher. The question then is whether Leal himself and the other people in jail with them making these calls unite everybody in a common scheme. And I think Judge Browning then has a point, you almost have two distribution, buyer-seller type relationships. However, that wasn't what happened. And I think that separates the facts from the reality of how this came about. Unless your Honor has any other questions, I'll save a little bit of time. Thank you. Thank you, Counsel. May it please the Court, Counsel. My name is Jason Wisecup on behalf of the United States. Today, the Court should affirm the district court decision in this case. The main issue before the Court is whether the defendant met his burden to show a double jeopardy violation. That ultimate legal determination. Is that the right way to characterize it? Because Mr. Leal argues in his brief that if he makes a non-frivolous double jeopardy argument, the burden shifts to you. Is that not correct? If you look at the Tenth Circuit's decision in Daniels, it doesn't talk about any burden shifting. It puts it specifically on defendant to raise that. Defendant does cite some out-of-circuit law concerning where burden shifting might be appropriate. Again, out-of-circuit law. And again, even if you have that type of situation where at some point the burden did shift, first, we're not saying that there's enough of a facially legitimate claim necessarily to shift the burden. And even if you do have that, here, you don't have any evidence of interrelation between the conspiracies. We would meet our burden on that as well. Well, your ability to counsel indicates, of course not. You're not going to have discussions between these low-level people. That's what you want to prevent. Correct, Your Honor. But I mean, as far as there still needs to be some evidence of some interdependence between the conspiracies, you don't have that here at all. I mean, for example, if you could cite to, for example, Watson, which talked about grand scope and defendant cites this in his opening brief. But again, this is a factual determination. This is a factual question. Can that be, can the scope of the conspiracy be considered? Yes. Well, what about the role of the CI? So the role of the CI, this court has discussed whether one can conspire with a CI to complete a conspiracy. No, you can't do that. So you have that. Is it a relevant factor to have the CI taking place in both? Not to the extent that the CI is present in both, but there could be instances where that shows interdependence, yes. Here you don't have that. If you take the CI and Leal outside of each conspiracy, there's no interrelation. There's no interdependence. You have those two standing separately. Let me ask you about that. Your opposing counsel said that the goal, the common goal here under these facts was to generate drug transactions with the CI. That's the common goal. How would you respond to that? Because wasn't that the goal? That's why the government had the CI working with Mr. Leal was to make these drug transactions happen. So that seems like a goal. And why isn't it a common goal? And if it's a common goal, why don't we have the same conspiracy? Well, I think you often have a conspiracy where you have a CI working on multiple cases involving multiple people in meth transactions. And that's, I think, part of the reason why this court in DMECC minimized the role of a CI. Because if you have a CI who's involved in, say, 50 different drug trafficking transactions and those are all melded together, then you have real practical problems. Well, that's a little different, though, than what we're talking about here. Because you have one CI and Mr. Leal that are common to all of them. And so, I mean, there's no evidence here that your CI was out working all these other people as well. I mean, what we have is evidence that your CI is working with Mr. Leal, and then they're arranging for these deals. Correct, Your Honor. And again, but I think that specific issue was talked about with whether you can conspire with a certain CI. So again, if you have the CI, you had Leal, you had other types of interdependents. You have to have more than just the goal of making money off of meth trafficking. Right. Because then that would interrelate too many cases. But let's talk about that. So, I mean, in your scenario, because we have a CI, the government can actually set up Mr. Leal for higher penalties because they can say, well, they can't count Leal as part of the conspiracy. So they're not going to be able to prove an ongoing conspiracy. So we're going to have Leal work with our CI. We're going to charge them all separately. We're going to try them one at a time. And every time we go, we're going to ratchet up the penalties. I mean, what you're arguing opens the door for, as Mr. Bowles put it, pernicious conduct. I understand what you're saying, Your Honor. I mean, do you agree with that? Just because the CI was involved in multiple ones, that doesn't necessarily mean that there's not going to be some overlap besides the conspiracies in other instances. So that's the issue as far as how it lays it out, as far as conspiracies and successive conspiracies. Well, what if the CI was a private citizen, not a CI, and he was actually working with Mr. Leal under the factual scenario here? Do you have two independent deals? Or do you have, because you have the same people working on them, do you have a conspiracy? I think that would look more like a conspiracy, but that's putting me too much more in the fact finder role as far as what other areas of interdependence exist. So you ask a lot of different questions in regards to when there is overlap, when there is some overlap between facts and participants. That's not necessarily a conspiracy, but it could be. So what if you brought in, what if in this case we brought in a third party, a third person? We have the Tapio line, we have the Carmona line, and then we brought in a third line using Mr. Leal, the CI, and then we, instead of having two, we added another line. I think, again, the fact finder would have to make determinations, again, on interdependence, mutual goals, things like that, again, factual determinations in that specific instance. I mean, when you're adding more deals and more people to the group with sort of a middle man and a top guy like Mr. Leal, doesn't that ultimately, I mean, aren't you ultimately getting, every time you add one, isn't that increasing the evidence of a conspiracy? It could be, Your Honor, and that's what the court in Watson said. If you have a large scope and you have certain instances, I'm not saying the CI is completely irrelevant for the analysis, but the CI on his own with Leal on its own, that's not enough. You have certain instances, though, where, yes, the scope could be big enough, where, and again, the court said in Watson, the fact finder could, this was permissible for the fact finder to make that determination. Here you don't have that. You have Judge Browning analyzing the facts very in-depth, finding no interdependence in such cases. But didn't he partly find no interdependence based on sort of a break in time that the Tapia transactions occurred at one time and then it seemed like there was a pretty good break in time before the Carmona? There was. There was about a month in between when he went in and the end of the Tapia deal, I think, was about four weeks beforehand. So what about the idea that the indictment said that the Carmona transactions began no later than, I think it was July 21? Right, and I think the... I mean, does that sort of take the Carmonas back into the time frame of the Tapias by using that language? Not necessarily, Your Honor, because again, you're getting into a lot of speculation about... No, I'm getting into what was said in the indictment. But as far as whether there's interrelation in the evidence necessarily that would be presented at trial and how interrelated that is. The indictment does specify that and it is open-ended in that respect, but it doesn't necessarily state that evidence from the initial deal will be introduced. So what if you took the case to trial on the Carmona side and you found some evidence and you wanted to use some evidence predating the July 21 date? Could you do that? I think you could, yes, based on just the language of the indictment. And again, it is very possible. But isn't that a problem for you? I mean, you're sort of reserving the right to use that predated evidence, but at the Because there's a break of four weeks. Not necessarily. Again, what we're looking at here, though, necessarily, it's the defendant's burden to show the grant the double jeopardy violation in this case. It's not on us. Counsel, I've been interested in this question, too, because I'd like you to give us your take on what the district court said and footnote one of its opinion that Mr. Leal might be in the second trial. What was the judge getting at there? I think there were some practical considerations about ripeness, because necessarily if certain evidence was introduced during the trial that showed more interrelation, then a double jeopardy claim might have more validity. And there were issues with ripeness before the district court. The government does not raise this before the court here, because often the court has still considered double jeopardy claims even in instances such as this, where it wasn't necessarily ripe. There was still speculation as to what would be introduced. Well, if it wasn't ripe, why would he even decide if it's not ripe? It was ripe enough to make this decision that we're reviewing. Correct, Your Honor. And I think if you're Or is it ripe? Correct, Your Honor. And I think, again, that was a question. This court generally, and why the government decided not to bring that up before this court, is the court has generally reviewed such cases. But Judge Browning did say there are obviously ripeness issues. There's obviously issues with making a double jeopardy call before the actual trial has taken place. Could I maybe just try to restate, and you tell me if I've got it right, what you're saying about the CI. So if I understand it, our case law says a CI working for the government can't be a second party to a conspiracy. Am I right so far? What the case law says is one cannot, as a matter of law, conspire with a confidential informant. So it's more the spirit of the law. I'll read you the quote from Emick, which says confidential informants and government agents cannot serve as the second party to a conspiracy. Would you agree with that? Yes, Your Honor. All right. So the CI can't be a conspirator. Correct, Your Honor. But you also said that the CI's participation in both the Tapia and Carmona transactions or deals could be relevant. And that's where I'm having a little trouble with the argument. If it could be relevant, that suggests to me that if it's relevant, it could be relevant enough for interdependence. So why isn't it relevant enough for interdependence in this case? Well, again, that's a factual determination that the district court judge would have to make, and whether there's clear error or not. So for example, take you have a CI who's present in— Is interdependence clear error? It's clear error. That's what we're saying, Your Honor, because— Isn't that a mixed question of law and fact? I would say it's actually a factual question. Once you get into double jeopardy, which is the legal question, the ideas of whether the district court judge actually considered interdependence, things like that, those would be the more legal elements, whether there is—and when I'm referring to interdependence, I'm referring to whether there's actual factual interdependence where the district court judge is looking on the record to see actual interaction between the two different groups, which is necessarily factual, I think, Your Honor. Well, they got that, don't they, with the—I mean, just because the two, the Carmonas and the Tapias aren't talking, the CI and Mr. Leal are working both of those lines. Well, then, based on that reasoning, Your Honor, anything that the defendant could be interdependent in any time span would necessarily be part of one conspiracy, and I think that's the problem. Well, that's not true, is it? Because there would be—there could be cutoffs in time, like you've argued and like the government argued before Judge Browning, that one way to tell if they're not interdependent is to see if there's a break in time. So it's not over any span of time, right? Correct, Your Honor. There's definitely temporal limitations, things like that, and there are other questions as well, as far as, again, interdependence, mutual benefit, goals, things like that. But again, a lot of this is theoretical, where, again, we don't have knowledge of that interdependence, mutual goals. The participants outside—there's no evidence that the participants outside those two knew of each other, had some common goal, that type of thing. If Your Honors don't have any more questions, I'll just sum up. The defendant here failed to meet his burden to show a double-debris violation, and the court should thus deny the appeal. Thank you. Thank you, counsel. We have some time for rebuttal. Yes, Your Honor. Quickly, I wanted to say I think Judge Carson is absolutely correct. I don't think there's any difference between a CI and a third party. I think the CI was the governing tie that binded all of us together, and that was the Your Honor said that united this whole scheme together. I also wanted to address— But do you have a case where a CI isn't the second party but is the third party, and evidence that the CI was a third party is evidence of interdependence? Is there any case that's ever said that? I have not seen a case directly on point, Your Honor, but the cases on common scheme and purpose, I think, qualify these facts. I want to say, too, real quickly, Your Honor, on page 24 of the court's opinion, the court did say he did not need to wait to see the U.S. evidence at trial to determine whether there was a double-debris violation, because he could look at the scope of the two indictments. I see my time is up, but I wanted to make that point as well. Thank you. Thank you, Your Honor. Thank you both for your arguments. The case will be submitted. Counsel are excused.